IN THE SUPREME COURT OF TENNESSEE
AT JACKSON
April 6, 2017 Session

## STATE OF TENNESSEE v. ANTOINE PERRIER

**Appeal by Permission from the Court of Criminal Appeals**
**Criminal Court for Shelby County**
**No. 1007294  W. Mark Ward, Judge**

_____

**No. W2015-01642-SC-R11-CD**

_____

We granted the defendant's application for permission to appeal in this case with direction to the parties to particularly address the following issues: (1) the meaning of the phrase "not engaged in unlawful activity" in the self-defense statute, Tennessee Code Annotated section 39-11-611, and (2) whether the trial court or the jury decides whether the defendant was engaged in unlawful activity. We hold that the legislature intended the phrase "not engaged in unlawful activity" in the self-defense statute to be a condition of the statutory privilege not to retreat when confronted with unlawful force and that the trial court should make the threshold determination of whether the defendant was engaged in unlawful activity when he used force in an alleged self-defense situation. We further conclude that the defendant's conduct in this case constituted unlawful activity for the purposes of this statute. The defendant has also presented four other issues to this Court, arguing that the trial court erred by failing to properly instruct the jury on the lesser-included offenses of employing a firearm during the commission of a dangerous felony, that the second count of the indictment was deficient, that the trial court should have given the jury an instruction on the defense of necessity, and that the evidence was insufficient to support the defendant's conviction for assault. We affirm the judgments of the trial court and the Court of Criminal Appeals, albeit on separate grounds.

**Tenn. R. App. P. 11 Appeal by Permission; Judgments of the Court of Criminal Appeals Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which JEFFREY S. BIVINS, C.J., CORNELIA A. CLARK, SHARON G. LEE, and HOLLY KIRBY, JJ., joined.

Lance R. Chism, Memphis, Tennessee, for the appellant, Antoine Perrier.

Herbert H. Slatery III, Attorney General and Reporter; Andrée S. Blumstein, Solicitor General; Zachary T. Hinkle, Assistant Attorney General; Amy P. Weirich, District

Attorney General; and Betsy Wiseman and Omar Malik, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I. Facts

On February 13, 2010, the defendant fired a weapon at men standing in front of a convenience store, and he struck a young girl standing inside the store. The defendant was indicted in November 2010 for attempted second degree murder, employing a firearm during the commission of a dangerous felony, and six counts of aggravated assault. His trial was held in February 2011, and he was convicted of attempted voluntary manslaughter as a lesser-included offense of attempted second degree murder, employing a firearm during the commission of a dangerous felony, five counts of aggravated assault, and one count of assault as a lesser-included offense of aggravated assault. He was sentenced to an effective sentence of thirty years in the Tennessee Department of Correction.

At the defendant's trial, several of the victims named in the indictment testified, as well as the defendant and a female friend of the defendant who witnessed the shooting. The witnesses agreed that between 3:00 p.m. and 4:00 p.m. on February 13, 2010, the defendant and his female friend, Faith Taylor, visited the Miracles Mini Market in Memphis, Tennessee, to buy alcohol, that another customer at the store (Anthony Vasser) ogled Ms. Taylor, and that subsequently Anthony Vasser and his brother Teone Vasser exchanged words with the defendant outside. The witnesses disagreed as to the intensity of that exchange, but the result of the exchange was that the defendant, standing next to Ms. Taylor's vehicle, drew a loaded handgun from his jacket and shot toward the front door of the market, where Anthony Vasser, Teone Vasser, and Anthony Vasser's son were standing. Several bullets passed through Teone Vasser's clothing. The bullets struck an eight-year-old girl in her hand and grazed her stomach and leg. The defendant submitted that he acted in self-defense based on Teone Vasser's motions. The police did not find any weapons when they searched Teone Vasser. The defendant admitted that he had been previously convicted of a felony.

The defendant's original motion for new trial was filed late, as was the notice of appeal. The Court of Criminal Appeals waived the late-filed notice of appeal, but because of the late-filed motion for new trial, it only considered sufficiency of the evidence and sentencing, ultimately affirming his convictions. *State v. Perrier*, No. W2011-02327-CCA-MR3-CD, 2013 WL 1189475 (Tenn. Crim. App. Mar. 22, 2013).

2

Upon filing a petition for post-conviction relief, the trial court granted the defendant a delayed appeal.

In his second appeal, the defendant claimed that the trial court's jury instruction on self-defense was erroneous, that the trial court committed plain error by failing to include a jury instruction on possession of a firearm during the commission of a dangerous felony as a lesser-included offense of employment of a firearm during the commission of dangerous felony, that the indictment for employment of a firearm was void for failing to name the predicate felony for the offense, that the trial court erred by declining his requested jury instruction on the defense of necessity, and that the evidence was insufficient to support his assault conviction. The Court of Criminal Appeals affirmed his convictions. *State v. Perrier*, No. W2015-01642-CCA-R3-CD, 2016 WL 4707934 (Tenn. Crim. App. Sept. 6, 2016), *perm. app. granted* (Tenn. Nov. 22, 2016).

The defendant filed an application for permission to appeal to this Court, and in granting review, this Court ordered that the following issues be addressed by the parties:

1. Should the trial court make a determination of whether the defendant was engaged in unlawful activity before charging the jury on self-defense or is the question of whether a defendant was engaged in unlawful activity a determination to be made by the jury?

2. What is the proper interpretation of the phrase "not engaged in unlawful activity" in Tennessee Code Annotated section 39-11-611(b)?

*State v. Perrier*, No. W2015-01642-SC-R11-CD (Tenn. Nov. 22, 2016) (order granting Tennessee Rule of Appellate Procedure 11 application).

## II.  Analysis

### A.  Self-defense Jury Instructions

#### 1.  Background

The defendant asserted a claim of self-defense at trial. Tennessee Code Annotated section 39-11-611(b) (2014 & 2017 Supp.)[1] provides the statutory basis for the defense:

---

[1] The text of the statute currently in effect is the same as that of the statute in effect of the time of the proceedings in the trial court, except for minor modifications not relevant to this case. Thus, quotations and citations in this opinion are to the current statute.

3

(1)	Notwithstanding § 39-17-1322,[2] a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force.

(2)	Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

    (A)	The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;
    (B)	The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and
    (C)	The belief of danger is founded upon reasonable grounds.

The trial judge provided a self-defense instruction to the jury, but he added to the pattern instruction by giving examples of what might constitute unlawful activity. The following is the self-defense instruction given by the trial judge in this case, with additions to the pattern instruction italicized:

    If a defendant was not engaged in unlawful activity and was in a place where he or she had a right to be, he or she would have no duty to retreat before threatening or using force against the alleged victim when and to the degree the defendant reasonably believed the force was immediately necessary to protect against the alleged victim's use or attempted use of unlawful force.

    If a defendant was not engaged in unlawful activity and was in a place where he or she had a right to be, he or she would also have no duty to retreat before threatening or using force intended or likely to cause death

---

[2] Tennessee Code Annotated section 39-17-1322 (2014 & 2017 Supp.) provides a defense to prosecution for weapons violations under Part 13 when a person used a handgun in justifiable self-defense.

4

or serious bodily injury if: [(]A) the defendant had a reasonable belief that there was an imminent danger of death or serious bodily injury[;] (B) the danger creating the belief of imminent death or serious bodily injury was real, or honestly believed to be real at the time[;] and (C) the believe of danger was founded upon reasonable grounds.

In determining whether the defendant's use of force in defending himself was reasonable, you may consider not only his threat or use of force but also all the facts and circumstances surrounding and leading up to it. Factors to consider in deciding whether there were reasonable grounds for the defendant to fear death or serious bodily injury from the alleged victim include but are not limited to any previous threats of the alleged victim made known to the defendant; the character of the alleged victim for violence, when known to the defendant; the animosity of the alleged victim for the defendant, as revealed to the defendant by previous acts and words of the alleged victim; and the manner in which the parties were armed and their relative strengths and sizes.

The use of force against the alleged victim would not have been justified if the defendant provoked the alleged victim's use or attempted use of unlawful force, unless the defendant abandoned the encounter or clearly communicated to the alleged victim the intent to do so, and the alleged victim nevertheless continued or attempted to use unlawful force against the defendant.

This defense is not available to the defendant if the victim was an innocent third person who was recklessly injured or recklessly killed by the defendant's use of force. "Recklessly" has been previously defined in these instructions.

*Whether a defendant was "engaged in unlawful activity" at the time he or she is claiming "self-defense" is a question for the jury's determination.*

*(a) It is a violation of federal law and unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to ship or transport in interstate or foreign commerce any firearm or ammunition; or to possess in or affecting commerce, and firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.*

5

*(b)  It is a violation of federal law and unlawful for any person to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record.*

*[(c) Omitted by the trial court]*

*(d)  It is a violation of state law and unlawful for a person who has been convicted of a felony to possess a handgun.  In order to establish a violation of this provision the state would have to prove beyond a reasonable doubt that (a) that the defendant had been convicted of a felony; (b) that the defendant, after such felony conviction, possessed a handgun; and (c) that the defendant acted either intentionally, knowingly or recklessly.*

*(e)  It is a violation of state law for a person to unlawfully carry a weapon with intent to go armed.  In order to establish a violation of this provision the state would have to prove beyond a reasonable doubt that (a) the defendant carried a firearm; (b) that the defendant did so with intent to go armed; and (c) that the defendant acted intentionally, knowingly or recklessly.  A person who has been convicted of a felony offense is ineligible to obtain a handgun carry permit.*

"Force" means compulsion by the use of physical power or violence. "Violence" means evidence of physical force unlawfully exercised so as to damage, injury or abuse.  Physical contact is not required to prove violence. Unlawfully pointing a deadly weapon at an alleged victim is physical force directed tower the body of the victim.

"Imminent" means near at hand; on the point of happening.

"Serious bodily injury" means bodily injury that involves a substantial risk of death; protracted unconsciousness; extreme physical pain; protracted of obvious disfigurement; or protracted loss or substantial impairment of a function of a bodily member, organ or mental faculty. "Bodily injury" includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty.

If evidence is introduced supporting self-defense, the burden is on the state to prove beyond a reasonable doubt that the defendant did not act in self-defense.

If from all the facts and circumstances you find the defendant acted in self-defense, or if you have a reasonable doubt as to whether the defendant acted in self-defense, you must find him not guilty.

## 2. Standard of Review

The primary issues in this case concern the trial court's jury instructions on self-defense and the construction of this state's self-defense statute. As issues involving statutory construction present questions of law, we review such questions de novo with no presumption of correctness. *State v. Dycus*, 456 S.W.3d 918, 924 (Tenn. 2015) (citing *State v. Springer*, 406 S.W.3d 526, 532-33 (Tenn. 2013); *State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010); *State v. Wilson*, 132 S.W.3d 340, 341 (Tenn. 2004)); *Carter v. Bell*, 279 S.W.3d 560, 564 (Tenn. 2009). Whether the trial court properly instructed the jury on a certain offense is a mixed question of law and fact, which also requires de novo review with no presumption of correctness. *State v. Thorpe*, 463 S.W.3d 851, 859 (Tenn. 2015) (citing *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001)).

This case also requires us to interpret the self-defense statute. When engaging in statutory interpretation, "well-defined precepts apply." *State v. McNack*, 356 S.W.3d 906, 908 (Tenn. 2011). "The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope." *Owens v. State*, 908 S.W.2d 923, 926 (Tenn. 1995) (citing *State v. Sliger*, 846 S.W.2d 262, 263 (Tenn. 1993)); *Bell*, 279 S.W.3d at 564 (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)). In construing statutes, Tennessee law provides that courts are to avoid a construction that leads to absurd results. *Tennessean v. Metro. Gov't of Nashville*, 485 S.W.3d 857, 872 (Tenn. 2016). "Furthermore, the 'common law is not displaced by a legislative enactment, except to the extent required by the statute itself.'" *Wlodarz v. State*, 361 S.W.3d 490, 496 (Tenn. 2012) (quoting *Houghton v. Aramark Educ. Res., Inc.*, 90 S.W.3d 676, 679 (Tenn. 2002)), *abrogated on other grounds*, *Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016). "When statutory language is clear and unambiguous, we must apply its plain meaning in its normal and accepted use, without a forced interpretation that would extend the meaning of the language[,] and . . . enforce the language without reference to the broader statutory intent, legislative history, or other sources." *Carter*, 279 S.W.3d at 564 (citations omitted).

### 3. Historical Review of Self-defense Law in Tennessee

Prior to 1989, self-defense was a matter of common law in Tennessee rather than statutory law. *See* Tenn. Code Ann. § 39-11-611, Sentencing Comm'n Cmts. ("This section codifies much of the common law doctrine of self defense."). Also prior to 1989, the law on self-defense included the duty to retreat:

> "Also well established in the law of excusable homicide is the requirement that the slayer must have employed all means in his power, consistent with his own safety, to avoid danger and avert the necessity of taking another's life."

*State v. Kennamore*, 604 S.W.2d 856, 859 (Tenn. 1980) (quoting *State v. McCrary*, 512 S.W.2d 263, 265 (Tenn. 1974)). This Court recognized a limited exception to the duty to retreat when a person is acting in "defense of one's home or habitation." *Id.* at 858-59 (discussing *Morrison v. State*, 371 S.W.2d 441 (1963), and determining that *Morrison* did not adopt the "true man" doctrine).

However, the General Assembly codified the law on self-defense in 1989 and specifically included a provision that eliminated the duty to retreat:

> In 1989, the General Assembly added a "no duty to retreat" rule to the law of self-defense. This legislation, now codified in the Tennessee Code, provides:
>
>> A person is justified in threatening or using force against another person when and to the degree the person reasonably believes the force is immediately necessary to protect against the other's use or attempted use of unlawful force. . . . *There is no duty to retreat before a person threatens or uses force*.
>
> Tenn. Code Ann. § 39-11-611(a) (1989) (emphasis added).

*State v. Renner*, 912 S.W.2d 701, 703-04 (Tenn. 1995). In 2007, the General Assembly re-wrote the self-defense statute. The relevant sections now read:

> (b)(1) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force against another person when and to the degree the person reasonably believes the force is

8

immediately necessary to protect against the other's use or attempted use of unlawful force.

(2) Notwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force intended or likely to cause death or serious bodily injury, if:

> (A) The person has a reasonable belief that there is an imminent danger of death or serious bodily injury;

> (B) The danger creating the belief of imminent death or serious bodily injury is real, or honestly believed to be real at the time; and

> (C) The belief of danger is founded upon reasonable grounds.

Tenn. Code Ann. § 39-11-611(b). The effect of this statute, particularly the "not engaged in unlawful activity" language, is the subject of this appeal.[3]

### 4. Arguments of the Parties

The defendant argues that the phrase "not engaged in unlawful activity" is unclear but recognizes that the legislative history of the statute does not shed any light on the meaning of the phrase.[4] The defendant contends that the phrase only modifies the duty to retreat and does not apply to the entirety of the law of self-defense. He further argues that the General Assembly "intended for there to be a nexus requirement between the defendant's unlawful activity and the defendant's need to assert self-defense," in other words, that the defendant's unlawful activity is what caused him to have to defend himself. Any other construction, according to the defendant, "would lead to an absurd result." The State responds that the plain language of the statute does not encompass a causal nexus. Other points on which the parties disagree are whether the trial court or the

---

[3] Tennessee Code Annotated section 39-11-611(c)-(d), commonly referred to as the "castle doctrine," is not implicated in this case.

[4] Indeed, as the bill made its way through the General Assembly, the legislative discussion focused exclusively on expanding the "castle doctrine," and legislators did not discuss at all the meaning of the phrase "not engaged in unlawful activity." *See, e.g., Hearing on H.B. 1907 Before the H. Judiciary Committee*, 2007 Leg., 105th Sess. (Tenn. April 4, 2007) (statement of Rep. Randy Rinks, a sponsor of the bill).

jury determines if the defendant engaged in unlawful activity and how the self-defense statute interacts with Tennessee Code Annotated section 39-17-1322.

### 5. Duty to Retreat

Before inquiring into these other matters, we will first consider the defendant's argument that the "not engaged in unlawful activity" language applies only to whether a defendant has a duty to retreat. Again, the pertinent language of the statute is that "[n]otwithstanding § 39-17-1322, a person who is not engaged in unlawful activity and is in a place where the person has a right to be has no duty to retreat before threatening or using force . . . ." To answer the question of whether the unlawful activity language modifies the entirety of the claim of self-defense or only applies to the no-duty-to-retreat qualification, we must further examine the history and language of the statute because the statutory language is not clear and unambiguous. In fact, this Court has previously assumed that the unlawful activity language applied to the defense as a whole; however, in that case, this question was not presented to the Court for consideration. *See State v. Hawkins*, 406 S.W.3d 121, 128 (Tenn. 2013) ("To prevail on the theory of self-defense, a defendant must show that he or she was 'not engaged in unlawful activity' and was 'in a place where the person has a right to be.'" (quoting Tenn. Code Ann. § 39-11-611(b)(1) (2010))).

On the other hand, in *State v. Montgomery*, the parties assumed that if the defendant was engaged in unlawful activity that he would not be excused from the duty to retreat, and the Court of Criminal Appeals accepted this assumption when discussing whether the defendant had, in fact, been engaged in unlawful activity. *See State v. Montgomery*, No. E2014-01014-CCA-R3-CD, 2015 WL 3409485, at *5-8 (Tenn. Crim. App. May 28, 2015), *perm. app. denied* (Tenn. Oct. 15, 2015). In the same case, the Court of Criminal Appeals held that the trial court's jury instructions "fairly submitted the legal issues, including that one only has a duty to retreat if engaged in unlawful activity." *Id.* at *10. In other cases, however, the Court of Criminal Appeals has stated that the self-defense statute as a whole requires that a defendant not be engaged in unlawful activity. *See State v. Dyson*, No. W2014-01818-CCA-R3-CD, 2015 WL 9466679, *4 (Tenn. Crim. App. Dec. 28, 2015), *perm. app. denied* (Tenn. Aug. 19, 2016); *State v. Carlisle*, No. W2012-00291-CCA-MR3-CD, 2013 WL 5561480, *18-19 (Tenn. Crim. App. Oct. 7, 2013), *perm. app. denied* (Tenn. March 17, 2014).

The abandonment of the duty to retreat was "[t]he primary distinction" between the common law and the statutory law of self-defense. 11 David L. Raybin, *Tennessee Practice: Criminal Practice and Procedure*, § 28:36 Self-defense (Dec. 2016 Update). The duty to retreat was the focus of both the *Kennamore* case and the *Renner* case, the former of which was decided under the common law and the latter of which was decided

10

under the first iteration of the statutory law on self-defense. *Renner*, 912 S.W.2d at 703-04; *Kennamore*, 604 S.W.2d at 858-60. The third phrase in the pertinent language, "is in a place where the person has a right to be," is related to the "true man" doctrine discussed in *Renner*. *See Renner*, 912 S.W.2d at 704. The "true man" doctrine is simply another term for the no-duty-to-retreat rule, and it provides that one does not have to retreat from a threatened attack.

> [T]his doctrine applies only: (1) when the defendant is without fault in provoking the confrontation, and (2) when the defendant is in a place where he has a lawful right to be and is there placed in reasonably apparent danger of imminent bodily harm or death.

*Id.* (citations omitted). The provocation factor is codified in Tennessee Code Annotated section 39-11-611(e)(2). The second factor is now the phrase "is in a place where the person has a right to be." Tenn. Code Ann. § 39-11-611(b). The relationship between that phrase and the "true man"/no-duty-to-retreat rule lends credence to the defendant's argument that the "not engaged in unlawful activity" language only applies to whether a duty to retreat exists.

The unlawful activity language is also in subsection (d)(3) of the self-defense statute. Tenn. Code. Ann. § 39-11-611(d)(3). Under subsection (d)(3), the presumption established in subsection (c), for a person defending himself or herself in a residence, business, or vehicle, does not apply if the person who used force was "engaged in an unlawful activity." *Id.* The presumption is that a person using defensive force in a residence/business/dwelling/vehicle "held a reasonable belief of imminent death or serious bodily injury" when the defensive force was used against someone "who unlawfully and forcibly enter[ed]" said building or vehicle. Tenn. Code Ann. § 39-11-611(c). Thus, under subsection (d)(3), a person engaged in unlawful activity is not entitled to the subsection (c) presumption that his or her belief of imminent death or serious bodily injury was reasonable under the circumstances. Interpreting "not engaged in unlawful activity" as used in subsections (b)(1) and (b)(2) as a condition on the privilege to not retreat is consistent with the way "engaged in an unlawful activity" is used as a limitation on the subsection (c) presumption. Therefore, taking into consideration the history of the statute, the developments in case law as connected to the principles espoused in the statute, and the language of the statute as a whole, we conclude that the phrase "engaged in unlawful activity" applies only to a person's duty to retreat.

This interpretation is consistent with other states that have equivalent statutes. Several other states use language similar to "engaged in unlawful activity" in their self-defense statutes, both in regard to castle doctrine provisions (self-defense when the defendant is in his or her own home/business/vehicle) and so-called "stand your ground"

provisions (self-defense when the defendant is in a place he or she has the right to be). In about half of states that have "stand your ground" provisions, the language similar to "engaged in unlawful activity" clearly relates to the duty to retreat clause. *See* Ala. Code § 13A-3-23(b) (2016); Ariz. Rev. Stat. Ann. § 13-405(B) (2010); Fla. Stat. Ann. § 776.012(2) (West 2014); Iowa Code Ann. § 704.1(3) (West 2017); La. Rev. Stat. Ann. § 14.20(C) (2014); Miss. Code Ann. § 97-3-15(4) (West 2016); Nev. Rev. Stat. § 200.120(c) (2015); 18 Pa. Cons. Stat. Ann. § 505(b)(2.3) (West 2011). For example, Alabama's self-defense statute states that "[a] person who is justified . . . in using physical force, including deadly physical force, and who is not engaged in an unlawful activity and is in any place where he or she has the right to be has no duty to retreat and has the right to stand his or her ground." Ala. Code § 13A-3-23(b). As another example, Mississippi's Justifiable Homicide statute states:

> A person who is not the initial aggressor and is not engaged in unlawful activity shall have no duty to retreat before using deadly force under subsection (1)(e) or (f) of this section if the person is in a place where the person has a right to be, and no finder of fact shall be permitted to consider the person's failure to retreat as evidence that the person's use of force was unnecessary, excessive or unreasonable.

Miss. Code Ann. § 97-3-15(4). However, other states use more narrow language, *e.g.* when a person "[i]s attempting to commit, committing, or fleeing after the commission or attempted commission of a felony" that person is limited in using force in self-defense. *See* Ga. Code Ann. § 16-3-21(b)(2) (West 2001); Ind. Code Ann. § 35-41-3-2(g)-(h) (West 2013) (using "crime" instead of "felony"); Mo. Ann. Stat. § 563.031(1)(3) (West 2016) (specifying "forcible felony"); Mont. Code Ann. § 45-3-105(1) (West 2009) (also specifying "forcible felony"); N.C. Gen. Stat. Ann. § 14-51.4(1) (West 2011); Utah Code Ann. § 76-2-402(2)(a)(ii) (West 2010). Texas falls into both categories. *See* Tex. Penal Code Ann. § 9.31(a)(3), § 9.31(e) (West 2007) (providing that the presumption that the use of force was reasonable does not apply if the actor was "engaged in criminal activity, other than a Class C misdemeanor [traffic violation]" and that there is no duty to retreat when a person is "not engaged in criminal activity").

Some states have provisions similar to Tennessee's that are not as clear. Kentucky's "stand your ground" provision states:

> A person who is not engaged in an unlawful activity and who is attacked in any other place where he or she has a right to be has no duty to retreat and has the right to stand his or her ground and meet force with force, including deadly force, if he or she reasonably believes it is necessary to do so to

prevent death or great bodily harm to himself or herself or another or to prevent the commission of a felony involving the use of force.

Ky. Rev. Stat. Ann. § 503.055(3) (West. 2006); *see also* Okla. Stat. Ann. tit. 21 § 1289.25(D) (West 2011) (using nearly identical language as the Kentucky statute). In Michigan, the self-defense statute reads in part:

> (1) An individual who has not or is not engaged in the commission of a crime at the time he or she uses deadly force may use deadly force against another individual anywhere he or she has the legal right to be with no duty to retreat if either of the following applies:
>
> > (a) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent death of or imminent great bodily harm to himself or herself or to another individual.
> >
> > (b) The individual honestly and reasonably believes that the use of deadly force is necessary to prevent the imminent sexual assault of himself or herself or of another individual.

Mich. Comp. Laws Ann. § 780.972(1) (West 2006). Of these three states, our research revealed no cases in Oklahoma or Michigan directly interpreting the effect of the unlawful activity provision on the duty to retreat. However, an appellate court in Oklahoma ruled that a defendant engaged in an unlawful act (using a sawed-off shotgun) did not benefit from the "stand your ground" statute, namely immunity from criminal prosecution. *Dawkins v. State*, 252 P.3d 214, 218 (Okla. Crim. App. 2011). In Michigan, the Model Criminal Jury Instructions include an instruction entitled "Duty to Retreat to Avoid Using Deadly Force," which states that "a person is not required to retreat if the person . . . has not or is not engaged in the commission of a crime at the time the deadly force is used." Mich. M. Crim. JI 7.16. In *Jackson v. Commonwealth*, the Kentucky Supreme Court determined that a defendant collecting payment for previously-delivered heroin was engaged in unlawful activity and was not, therefore, entitled to a "no duty to retreat" jury instruction. *Jackson v. Commonwealth*, 481 S.W.3d 794, 798 (Ky. 2016). Underlying its holding is the following premise:

> As stated in KRS 503.055(3), the "right to stand [one's] ground and meet force with force" is available only to one "who is not engaged in an unlawful activity" at the time. Because the undisputed evidence established that Appellant was not engaged in lawful activity, he was not entitled to the "no duty to retreat" instruction.

13

*Id.* at 797.

As evidenced by the cases cited from other states, whether someone had a duty to retreat before using force in self-defense is an issue that typically manifests in the context of jury instructions. Consistent with our holding that the phrase "not engaged in unlawful activity" is a condition on a person's statutory privilege not to retreat, we hold that a person is entitled to a jury instruction that he or she did not have to retreat from an alleged attack only when the person was not engaged in unlawful activity and was in a place the person had a right to be.[5]

### 6. Threshold Determination and Burden of Proof

We next address whether the trial court or the jury determines if the defendant has met the conditions for the privilege not to retreat. This Court has previously held that the application of the "no duty to retreat" rule is a jury question. *See State v. Pruitt*, 510 S.W.3d 398, 419-20 (Tenn. 2016) (citing *Renner*, 912 S.W.2d at 704). In *Renner*, this Court explained that factual issues related to the duty to retreat were jury questions and that the State could elicit testimony on those issues, such as whether the defendant had a right to be on the premises, for example. *Renner*, 912 S.W.2d at 704. However, who determines whether someone was engaged in unlawful activity for purposes of the retreat component of the self-defense statute has not been addressed by this Court.

The Court of Criminal Appeals has been split on the question of whether the trial court or the jury decides if the defendant engaged in unlawful activity. Some panels have held that a trial court can decline to give the self-defense instruction entirely based on its determination that the defendant was engaged in unlawful behavior. *See Dyson*, 2015 WL 9466679, at *4 (holding that the trial court properly declined to charge the jury with self-defense because the defendant was shoplifting); *State v. Farmer*, No. W2013-02736-CCA-R3-CD, 2015 WL 314704, at *7 (Tenn. Crim. App. Jan. 23, 2015); *Carlisle*, 2013 WL 5561480, at *19. Other panels have held that whether the defendant was engaged in unlawful activity was a question for the jury. *See Perrier*, 2016 WL 4707934, at *12; *Montgomery*, 2015 WL 3409485, at *10.

The Alabama Court of Criminal Appeals opinion, *Fuller v. State*, is particularly instructive on this issue. *See Fuller v. State*, --- So. 3d ---, 2015 WL 9261777, at *10 (Ala. Crim. App. Dec. 18, 2015), *perm. app. denied* (Ala. 2017). The defendant in *Fuller*

---

[5] We address the defendant's argument that there must be a causal nexus between a defendant's unlawful activity and his need to defend himself later in this opinion.

14

asserted that he had acted in self-defense and requested that the trial court instruct the jury that he was entitled to stand his ground when he used deadly force against an alleged attacker. *See id.* at *3. The trial court, outside the presence of the jury, heard evidence that the defendant had a prior felony conviction and subsequently ruled that the defendant was not entitled to a "stand your ground" instruction because he had engaged in unlawful activity by being a felon in possession of a firearm. *Id.* at *4, n.1. The trial court then instructed the jury on the law of self-defense, including an instruction that the defendant had a duty to retreat. *Id.* at *4. On appeal, the defendant argued that his possession of a firearm was not unlawful activity, but the appellate court concluded that while a person who cannot otherwise lawfully possess a handgun may nonetheless take up a handgun in self-defense under Alabama law, the defendant had proactively armed himself and was thus engaged in unlawful activity. *Id.* at *9. In his opinion dissenting from the Alabama Supreme Court's decision to quash a previously granted writ of certiorari in that case, Justice Tom Parker identified the issue in *Fuller* as "whether [the defendant] presented evidence indicating that he was not engaged in unlawful activity so as to be entitled to a jury instruction under § 13A-3-23(b)." *Ex Parte Fuller*, --- So. 3d ---, 2017 WL 836565 (Ala. March 3, 2017) (Parker, J., dissenting).

The Alabama Court of Criminal Appeals has also affirmed another trial court that refused to give the duty to retreat instruction based on a defendant's unlawful activity, *see Diggs v. State*, 203 So. 3d 120, 125-26 (Ala. Crim. App. 2015), and reversed a trial court that refused to give the "stand your ground" instruction when the prosecution did not present evidence that the defendant "was acting in a way that was unlawful or was at a place where he did not have the right to be." *Thomas v. State*, 224 So. 3d 688, 693 (Ala. Crim. App. 2016).

Like Alabama, an appellate court in Arizona has concluded that a trial court rightfully rejected a defendant's requested "no duty to retreat" jury instruction because the defendant had been engaged in unlawful activity. *See State v. Bland*, No. 2 CA-CR 2014-0065, 2015 WL 802860, *6 (Ariz. Ct. App. Feb. 25, 2015). In Kentucky, a court can refuse to give a "no duty to retreat" instruction when the court has determined that a defendant was engaged in unlawful activity. *Jackson*, 481 S.W.3d at 798. The Louisiana Supreme Court has ruled that a defendant who had been involved in a narcotics transaction "received the benefit of an instruction informing the jury they could not consider the possibility of retreat" even though he was not entitled to that instruction due to his unlawful activity. *State v. Wells*, 209 So. 3d 709, 718 (La. 2015).

In these other states, the trial court is tasked with the threshold determination of whether a defendant was engaged in criminal activity such that the "no duty to retreat" instruction would not apply. This method is compatible with the current structure of our

15

self-defense instruction. As this Court explained in *State v. Hawkins*, self-defense is a general defense and as such it

> need not be submitted to the jury unless it is "fairly raised by the proof." Tenn. Code Ann. § 39-11-203(c) (2010). The quantum of proof necessary to fairly raise a general defense is less than that required to establish a proposition by a preponderance of the evidence. To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor. Whenever admissible evidence fairly raises a general defense, the trial court is required to submit the general defense to the jury. From that point, the burden shifts to the prosecution to prove beyond a reasonable doubt that the defense does not apply.

*Hawkins*, 406 S.W.3d at 129 (citation omitted).

Within this structure, the trial court makes the threshold determination whether to charge the jury with self-defense, and we conclude that the trial court, as part of that threshold determination, should decide whether to charge the jury that a defendant did not have a duty to retreat. As part of that decision, the trial court should consider whether the State has produced clear and convincing evidence that the defendant was engaged in unlawful activity such that the "no duty to retreat" instruction would not apply. Because the allegedly unlawful activity will oftentimes be uncharged conduct similar to evidence of prior bad acts, the procedure outlined in Tennessee Rule of Evidence 404(b) should be utilized by the parties.

### 7. Application

In this case, as discussed above, the trial court left the determination of whether the defendant was engaged in unlawful activity to the jury but provided additional guidance on what conduct of the defendant might constitute unlawful activity. "It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citations omitted). Therefore, trial courts have a duty to give "a complete charge of the law applicable to the facts of a case." *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986). Questions regarding the propriety of jury instructions are mixed questions of law and fact; thus, our standard of review is de novo with no presumption of correctness. *Rush*, 50 S.W.3d at 427; *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001). "An instruction should be considered prejudicially erroneous only if the jury charge, when read as a

16

whole, fails to fairly submit the legal issues or misleads the jury as to the applicable law." *State v. Faulkner*, 154 S.W.3d 48, 58 (Tenn. 2005) (citing *State v. Vann*, 976 S.W.2d 93, 101 (Tenn. 1998)).

Based on our holding above that a defendant's engagement in unlawful activity for the purpose of the self-defense statute is a threshold determination to be made by the trial court, the trial court's jury instructions in this case were erroneous. However, the State contends that the instructions were harmless beyond a reasonable doubt, while the defendant argues that the instructions were prejudicially erroneous because under the instructions, his illegal possession of a weapon could have been considered engaging in unlawful activity by the jury. This, he claims, "gutted" his self-defense strategy because even if the jury believed he was justified in firing his weapon, they would not be able to acquit him under the self-defense theory because he did not retreat when he had a duty to do so. He also claims that the instructions were incomplete because the trial court failed to instruct the jury that any unlawful activity must have had a causal nexus to his need to defend himself.

Considering whether the defendant's possession of a firearm when he was a convicted felon amounted to engaging in unlawful activity, we hold that this conduct is encompassed within "unlawful activity." The defendant points to the language at the beginning of each relevant subsection of the self-defense statute—"Notwithstanding § 39-17-1322"—as support for his argument, maintaining that the legislature did not intend for possession, display, or employment of handguns to ever be the unlawful activity that would require the defendant to retreat before using defensive force.[6] We note that the common law duty to retreat required "that the slayer must have employed all means in his power, consistent with his own safety, to avoid danger and avert the necessity of taking another's life." *McCrary*, 512 S.W.2d at 265. Thus, a duty to retreat does not mean that a person cannot defend herself or himself. A defendant may still defend himself even to the point of using deadly force, and as Code section 39-17-1322 makes clear, may be acquitted of a weapons offense if a jury finds that his self-defense was justifiable. *See* Tenn. Code Ann. §§ 39-11-611; 39-17-1322. These provisions are not mutually

---

[6] Tennessee Code Annotated section 39-17-1322 provides:

A person shall not be charged with or convicted of a violation under this part if the person possessed, displayed or employed a handgun in justifiable self-defense or in justifiable defense of another during the commission of a crime in which that person or the other person defended was a victim.

17

exclusive.[7]  In this case, there was clear and convincing evidence at trial that the defendant had a felony conviction and that he possessed a handgun.  Thus, he was engaged in unlawful activity. *See* Tenn. Code Ann. § 39-17-1307(c)(1) (2014 & 2017 Supp.).

The defendant maintains that any unlawful activity by a defendant asserting self-defense must have a causal nexus to his perceived need to defend himself.  The State responds that the statutory language does not admit a reading that includes a causal nexus.  It is unnecessary to resolve this issue to decide the case before us.  We conclude that under the facts of this case, the trial court's error in instructing the jury was harmless beyond a reasonable doubt[8] because no reasonable jury would have accepted the defendant's self-defense theory.  The evidence showed that any belief on the defendant's part that he was in imminent danger of death or serious bodily injury was not reasonable considering the testimony by multiple witnesses that only words had been exchanged and that no one had used or attempted to use unlawful force on the defendant.  *See* Tenn. Code Ann. § 39-11-611(b).  Therefore, the trial court's jury charge was not prejudicially erroneous.[9]

## B.  Lesser-Included Offense

The defendant's next argument is that the trial court committed plain error by failing to instruct the jury on possession of a firearm as a lesser-included offense of employment of a firearm during the commission of a dangerous felony.  He admits that the issue is waived because trial counsel did not submit a written request for the instruction. *See* Tenn. Code Ann. § 40-18-110(c) (2012 & 2017 Supp.).  However, he asserts that if this Court were to adopt the plain error standard of *Henderson v. U.S.*, 568 U.S. 266 (2013), that whether a decision is error should be judged at the time of appeal rather than at the time of trial, then it was plain error for the trial court not to instruct the

---

[7] The Court of Criminal Appeals has held that a defendant's weapons violation was not "unlawful activity" for purposes of the self-defense statute. *Montgomery*, 2015 WL 3409485, at *7.  We expressly overrule *Montgomery* to the extent that it is inconsistent with this opinion.

[8] "In order to determine whether an instructional error is harmless, the appellate court must ask whether it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *State v. Cecil*, 409 S.W.3d 599, 610 (Tenn. 2013) (internal quotation marks and citations omitted).

[9] We note that under the facts of this case, the justification of self-defense was not available to the defendant for the aggravated assault charge of the minor victim because she was an innocent third person injured by the defendant's conduct. *See* Tenn. Code Ann. § 39-11-604 (2014 & 2017 Supp.).

jury on lesser-included offenses of employment of a firearm. *See Henderson*, 568 U.S. at 279.

The accepted test for plain error review requires that:

(a)     the record must clearly establish what occurred in the trial court;
(b)     a clear and unequivocal rule of law must have been breached;
(c)     a substantial right of the accused must have been adversely affected;
(d)     the accused did not waive the issue for tactical reasons; and
(e)     consideration of the error is "necessary to do substantial justice."

*State v. Smith*, 24 S.W.3d 274, 282 (Tenn. 2000) (quoting *State v. Adkisson*, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994)).  To rise to the level of "plain error," an error "'must [have been] of such a great magnitude that it probably changed the outcome of the trial.'"  *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)).  All five factors must be established by the record before a court will find plain error.  *Smith*, 24 S.W.3d at 282-83.  Complete consideration of all the factors is not necessary when it is clear that at least one of the factors cannot be established by the record.

In *State v. Martin*, 505 S.W.3d 492 (Tenn. 2016), this Court disposed of the same argument presented by the defendant in this case.  In *Martin*, we determined that the uncontroverted evidence showed that the defendant employed a firearm during a dangerous felony and that no jury would have determined that the defendant only possessed the weapon.  *Martin*, 505 S.W.3d at 507-08.  Likewise, in this case, the evidence shows even more clearly than in *Martin* that the defendant employed his firearm, so "[t]he defendant has not established that the trial court's failure to instruct the jury on possession of a firearm during the commission of a dangerous felony affected a substantial right."  *Id.* at 507.  The defendant therefore cannot meet the requirements for plain error review, and consequently, "[r]esolution of the *Henderson* question would make no difference to this defendant."  *Id.* at 508.

C.  Adequate Notice of Underlying Felony

The defendant argues that the indictment was insufficient to provide proper notice for the felony underlying the employing a firearm during the commission of a dangerous felony count.  *See* U.S. Const. amend. VI; Tenn. Const. art. I, § 9; Tenn. Code Ann. § 40-13-202 (2012 & 2017 Supp.).  He maintains that the indictment must expressly name the underlying dangerous felony within the firearm count and urges this Court to reconsider our decisions in *Martin*, 505 S.W.3d at 508-09, and *Duncan*, *State v. Duncan*, 505 S.W.3d 480, 491 (Tenn. 2016).  He does not, however, provide any reasoning or

19

authority substantiating a need for this Court to reconsider those cases. In both *Martin* and *Duncan*, this Court addressed and rejected the same argument presented by the defendant in this case. *Martin*, 505 S.W.3d at 508-09; *Duncan*, 505 S.W.3d at 491.

The first count of the defendant's indictment was for attempted second degree murder, and the second count was for employing a firearm during the commission of a dangerous felony. The first count of the indictment was the only count in the indictment that was a dangerous felony under Tennessee Code Annotated section 39-17-1324(i)(1) (2014 & 2017 Supp.). The firearm count referenced subsection 1324(i) but did not expressly name the underlying felony.

We held in *Duncan* that indictments referencing the statutory list of dangerous felonies but not expressly naming the particular dangerous felonies were nonetheless adequate under the constitutional and statutory requirements that an indictment sufficiently apprise a "defendant of the nature and cause of the accusation against him and enable[] him to adequately prepare a defense to the charge." *Duncan*, 505 S.W.3d at 491. *Martin* was released on the same day as *Duncan* and relied on *Duncan* for its holding that the indictment in that case met the notice requirements. *Martin*, 505 S.W.3d at 508-09. Based on our holdings in *Duncan* and *Martin*, we conclude that in this case, the defendant's indictment for employing a firearm during the commission of a dangerous felony satisfies the constitutional and statutory notice requirements. *See Martin*, 505 S.W.3d at 508-09; *Duncan*, 505 S.W.3d at 491.

## D. Necessity

The defendant argues that the trial court should have granted his request to instruct the jury on the defense of necessity.[10] The State responds that because the harm sought to be avoided was not greater than the harm caused by the defendant's conduct, the trial court properly denied the defendant's requested instruction.

Whether the trial court properly instructed the jury on a certain offense is a mixed question of law and fact, which requires de novo review with no presumption of correctness. *Thorpe*, 463 S.W.3d at 859 (citing *Rush*, 50 S.W.3d at 427). Necessity is a general defense that must be submitted to the jury if it is fairly raised by the proof. *See*

---

[10] The defendant specifically requests that this Court rule that necessity is available as a defense when the harm sought to be avoided is from a human source and when the defendant's conduct amounts to a crime of violence. However, under the circumstances of this case, it is not necessary for this Court to make definitive rulings on those issues. We also note that the justification of necessity was not available to the defendant for the aggravated assault charge of the minor victim because she was an innocent third person injured by the defendant's conduct. *See* Tenn. Code Ann. § 39-11-604.

20

*Hawkins*, 406 S.W.3d at 129; Tenn. Code Ann. § 39-11-203(c) (2014 & 2017 Supp.). "To determine whether a general defense has been fairly raised by the proof, a court must consider the evidence in the light most favorable to the defendant and draw all reasonable inferences in the defendant's favor." *Hawkins*, 406 S.W.3d at 129.

The defense of necessity is available when a defendant "reasonably believes the conduct is immediately necessary to avoid imminent harm" and when "[t]he desirability and urgency of avoiding the harm clearly outweigh the harm sought to be prevented by the law proscribing the conduct, according to ordinary standards of reasonableness." Tenn. Code Ann. § 39-11-609 (2014 & 2017 Supp.). The Sentencing Commission Comments to this section state in full:

> This section codifies the common law defense of necessity. It excuses criminal liability in those exceedingly rare situations where criminal activity is an objectively reasonable response to an extreme situation. For example, the necessity defense would bar a trespass conviction for a hiker, stranded in a snowstorm, who spends the night in a vacant cabin rather than risking death sleeping in the open.
>
> The defense is limited to situations: (1) where the defendant acts upon a reasonable belief that the action is necessary to avoid harm; and (2) where the harm sought to be avoided is clearly greater than the harm caused by the criminal act. The defense is further limited in application to those offenses where it is not expressly excluded by statute.
>
> Subdivisions (1) and (2) contemplate a balancing between the harm caused by the conduct constituting an offense, and the harm the defendant sought to avoid by the conduct. If the harm sought to be avoided was, by ordinary standards of reasonableness, clearly greater than the harm actually caused (the offense), the defendant's conduct causing the offense is justified.

*Id.*, Sentencing Comm'n Cmnts. [11]

The trial court in this case determined that the harm sought to be avoided was not greater than the harm actually caused. We agree. Even if one of the Vasser brothers had been threatening to shoot the defendant, his firing toward the convenience store where

---

[11] The Sentencing Commission Comments to the Sentencing Act do not reflect legislation enacted in 1995 or thereafter because the Sentencing Commission terminated on June 30, 1995. Nevertheless, Tennessee Code Annotated sections 39-11-609 has not been amended since 1989.

three people were outside and at least three people were inside was a far greater harm. Therefore, considering the evidence in the light most favorable to the defendant, the proof did not fairly raise the defense of necessity.

## E. Sufficiency

Finally, the defendant argues that the proof was not sufficient to support his conviction for the assault of the convenience store owner, Shadaq Sharhan, because Mr. Sharhan was behind bulletproof glass when the defendant fired into his store.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, the defendant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *see also State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This Court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379. Because a jury conviction removes the presumption of innocence that the defendant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted defendant, who must demonstrate to this Court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

The definition of assault, as pertinent to this case, is "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2) (2014 & 2017 Supp.). "Bodily injury" includes "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(2) (2014 & 2017 Supp.).

At trial, Mr. Sharhan testified that he was "scared" when the shooting began. He also testified that he was behind bulletproof glass when the shooting began. The defendant argues that "no reasonable juror could have concluded that Mr. Sharhan reasonably feared imminent bodily injury." However, his argument is merely a request for this Court to re-weigh the evidence when the jury has already resolved this issue against the defendant. *See Dorantes*, 331 S.W.3d at 379. The proof at trial, viewed in the light most favorable to the State, supports the defendant's conviction for the assault of Mr. Sharhan.

### III. CONCLUSION

We conclude that the legislature intended the phrase "not engaged in unlawful activity" in the self-defense statute to be a condition of the statutory privilege not to retreat when confronted with unlawful force. We further conclude that the trial court bears the initial responsibility to determine whether the defendant was engaged in unlawful behavior when he used force in an alleged self-defense situation. We hold that the defendant's conduct in this case of being a felon in possession of a firearm was unlawful activity, but that the trial court's jury instructions were harmless error. Furthermore, the defendant is without relief regarding his remaining issues. In sum, we affirm the judgments of the trial court and the Court of Criminal Appeals, albeit on separate grounds for the issue regarding the interpretation of the self-defense statute.

_____

ROGER A. PAGE, JUSTICE

23